IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THE CADLE COMPANY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:97-CV-298-L** |
| | § | |
| **SWEET & BROUSSEAU, P.C.,** | § | |
| **CHANTILIS & BROUSSEAU, P.C.,** | § | |
| **MARYANN S. BROUSSEAU,** | § | |
| **MARK D. WINNUBST, and** | § | |
| **JAMES W. ROSE, JR.,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

By its order dated February 13, 2007, the court directed the parties to submit posttrial briefing to address the following: (1) the amount of attorney's fees, if any, that Plaintiff may be entitled to recover as damages for the underlying action giving rise to this malpractice suit, and evidence to support any damages suffered; (2) the amount of attorney's fees, if any, that Plaintiff may be entitled to recover in the current action, supported by adequate documentation and case authority to support each party's position; and (3) the amount of prejudgment interest, if any, that Plaintiff may be entitled to recover, and authorities supporting each party's position. After considering the parties' briefs, the record, and the applicable law, the court will award Cadle a total of **$326,655.81** in damages, which include the jury's award of $312,174.24 and additional attorney's fees in the amounts of $8,981.57 at the state trial level, and $5,500 at the state appellate level. The court will also award Cadle prejudgment interest in accordance with this opinion.

**Memorandum Opinion and Order – Page 1**

## I. BACKGROUND

This legal malpractice case has a long and tortuous history, starting with events dating back to 1991. The court has recounted the factual history of this case in detail in its memorandum opinion and order dated February 2, 2007, and other prior orders of the court, and it will not repeat those details here. The court will, however, outline the procedural history relevant to the issues of attorney's fees and prejudgment interest. In 1992, Defendants unsuccessfully represented Plaintiff, The Cadle Company ("Cadle"), in a state court lawsuit to recover on a promissory note (the "underlying suit"). In this state lawsuit, Cadle sought to recover $12,171.24 from David B. Lobingier ("Lobingier") and others. Lobingier filed a counterclaim against Cadle alleging breach of an agreement to withdraw adverse credit reports filed by Cadle. Afterwards, Plaintiff hired other counsel to pursue appeals, which were also unsuccessful. This malpractice action was filed on February 13, 1997, and was delayed for, among other reasons, the bankruptcy of a party. A jury finally heard this case and issued a verdict on March 3, 2006. The jury found in favor of Cadle and awarded damages of $312,171.24 – an amount to compensate Cadle for the $12,171.24 it failed to recover on the underlying suit over the promissory note, and the $300,000 judgment levied against Cadle as damages for a counterclaim in the underlying suit. Defendants filed a motion for judgment as a matter of law. On February 2, 2007, the court granted in part Defendants' motion with respect to Maryann Brousseau, but denied Defendants' motion with respect to all other Defendants. The court now addresses the parties' contentions regarding attorney's fees and prejudgment interest.

## II.  ATTORNEY'S FEES FROM THE UNDERLYING SUIT

### A.  Underlying Attorney's Trial Fees – $8,981.57

Cadle contends, and Defendants do not dispute, that necessary and reasonable attorney's fees through the trial stage of the underlying promissory note lawsuit amount to $8,981.57. Cadle argues that it should have recovered this amount in addition to the $12,171.24 debt owed on the promissory note under Texas law permitting recovery of attorney's fees for suits on contract. Plaintiff's Post Trial Brief on Additional Damages and Prejudgment Interest ("Pl. Br.") at 2. Defendants argue that Cadle should not receive these attorney's fees because the jury did not award such fees as a part of its damage award. Defendants' Response to Plaintiff's Post Trial Brief on Additional Damages and Prejudgment Interest ("Def. Br.") at 2. Cadle points out, however, that by stipulation of all parties, no evidence relating to attorney's fees was presented to the jury, as the court would decide the issue. Plaintiff's Reply Brief on Additional Damages and Prejudgment Interest ("Pl. Reply") at 1-2. The court also recalls that this was the stipulation to which the parties agreed.

The court determines that Cadle is entitled to recover $8,981.57 for the attorney's fees it incurred during the trial phase of the underlying suit, in addition to the $12,171.24 on the promissory note awarded by the jury. Cadle incurred these attorney's fees through the trial phase of the underlying suit, in which the jury determined that Cadle would have prevailed but for Defendants' negligence. Cadle's damages related to the promissory note, therefore, include the amount of the promissory note ($12,171.24) and the amount of attorney's fees it paid for Defendants to prosecute the matter ($8,981.57), both of which it would have recovered from Lobingier but for Defendants' negligence. Defendants do not dispute the reasonableness of the amount of fees incurred; they merely argue that the jury did not award such damages as a part of its verdict. As Cadle correctly

points out, the parties agreed that the court would make all determinations related to attorney's fees, not the jury.  Upon review of the record and the applicable law, and in light of Defendants' lack of objection as to the reasonableness and necessity of the amount, the court determines that the amount of $8,981.57 was reasonable and necessary for the prosecution of the underlying suit through the trial phase.  Accordingly, the court will award an additional $8,981.57 to Cadle for attorney's fees incurred through the trial phase of the underlying suit.

### B.  Underlying Appellate Fees – $5,500

Cadle contends it is entitled to recover an additional $5,500 for the expenses and attorney's fees it incurred in appealing the wrongful judgment from the underlying suit.[1]  Pl. Br. at 2-3. Defendants argue that such expenses are consequential damages that the court should not award in this diversity action, because Texas courts are split on the recovery of attorney's fees as consequential damages.  Def. Br. at 1-2.  Cadle and Defendants both cite to the same case law and agree that Texas appellate courts have taken two opposing positions on attorney's fees as consequential damages.  *See* Pl. Br. at 2; Def. Br. at 1-2.  Neither has cited any authority from the Texas Supreme Court or the Fifth Circuit that would guide this court in resolving such a split of authority; however, Defendants urge the court to "adopt the more conservative line of cases and deny Cadle any recovery of attorney's fees as damages."  Def. Br. at 2.  Cadle, on the other hand, urges the court to award these fees, stating that the "majority rule" favors such recovery.  Pl. Br. at 2 (citing 3 R. Mallen & J. Smith, Legal Malpractice § 20.6 (5th ed. 2000)).

---

[1]This amount includes $1,500 in attorney's fees for a motion for a new trial, $2,500 for an appeal to the state court of appeals, and $1,500 for an appeal to the Texas Supreme Court.  Pl. Br. at 2-3.  It is unclear what portion of the fees are filing expenses as opposed to attorney's fees; however, the parties argue over the full $5,500 amount in the context of attorney's fees as consequential damages, and the court will treat the full amount at issue in the same manner.

**Memorandum Opinion and Order – Page 4**

A federal court sitting in a diversity action must apply the forum state's substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). In applying and interpreting Texas law, this court must first determine whether it is "clear and unambiguous." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006). "If it is unclear, we determine whether any final decisions of the Texas Supreme Court are dispositive. If no final disposition is directly on point, we must make an 'Erie-guess', predicting how that court would rule." *Id.* (internal citations omitted). In making this "guess," the court may look to all available data, including decisions of the Texas Supreme Court in analogous cases, the rationales and analyses in underlying Texas Supreme Court cases on related issues, *dicta* by the Texas Supreme Court, lower state court decisions, the rulings of other state courts or treatises and legal commentaries. *Id. See also Putman v. Erie City Mfg. Co.*, 338 F.2d 911, 917 (5th Cir. 1964).

The court has not found any Texas Supreme Court decisions addressing the recoverability of attorney's fees as consequential damages in a legal malpractice action. A number of Texas appellate courts holds that attorney's fees may only be recovered when provided for by statute or contract. *See*, *e.g.*, *Burnside Air Conditioning and Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 898-99 (Tex. App.–Dallas 2003, no pet.); *Cupples Coiled Pipe, Inc. v. Esco Supply Co.*, 591 S.W.2d 615 (Tex. Civ. App.–El Paso 1979, writ ref'd n.r.e.); *Buck v. Johnson*, 495 S.W. 2d 291, 297 (Tex. Civ. App.–Waco 1973, writ ref'd n.r.e.); *Dalton S.S. Corp. v. W.R. Zanes & Co.*, 354 S.W.2d 621, 624 (Tex. Civ. App.–Fort Worth 1962, no writ). Other Texas appellate courts make an exception to this general rule, and hold that attorney's fees incurred as a consequence of a wrongful act, forcing a plaintiff to be involved in litigation with third parties, are recoverable. *See*, *e.g.*, *Telfair v. Bridges*, 161 S.W.3d 167, 170 (Tex. App.–Eastland 2005, no pet.); *Lesikar v. Rappeport*,

33 S.W.3d 282, 306 (Tex. App.–Texarkana 2000, pet denied); *Standard Fire Ins. Co. v. Stephenson*, 963 S.W.2d 81, 90 (Tex. App.–Beaumont 1997, no pet.); *Nationwide Mut. Ins. Co. v. Holmes*, 842 S.W.2d 335, 340-41 (Tex. App.–San Antonio 1992, writ denied); *Powell v. Narried*, 463 S.W.2d 43 (Tex. Civ. App.–El Paso 1979, writ ref'd n.r.e.).   This court believes the Texas Supreme Court would likely adopt this exception to the general rule if and when the state's high court addresses the recoverability of attorney's fees in legal malpractice cases.

The Texas Supreme Court has recognized, in *dicta*, that attorney's fees *may* be recoverable as an exception to the general rule in *Turner v. Turner*, an action for alienation of affection brought by a husband against his wife.   385 S.W.2d 230, 234 (Tex. 1965).   The Texas Supreme Court articulated the exception this way:   "where a plaintiff has been involved in litigation with a third party as a result of the tortious act of another, plaintiff may recover in a separate suit for his reasonable and necessary expenses in the prior litigation."   *Id.* (quoting from Sec. 914, Vol. 4, Restatement of Law, Torts).   While the Texas Supreme Court held that the exception was not applicable in that case, as it was brought by one spouse against the other for attorney's fees incurred in a previous suit against the other spouse, not a third party, it clearly left open that the exception could apply under different circumstances.   *See id.*   This court also finds instructive a separate Texas Supreme Court case addressing the recoverability of mental anguish damages in a legal malpractice case.   In *Douglas v. Delp*, the Texas Supreme Court concluded that the plaintiff's mental anguish damages were not recoverable because they were a consequence of her economic loss.   987 S.W.2d 879, 885 (Tex. 1999); however, the court stated, "[W]hen the injuries caused by an attorney's negligence are economic, the plaintiff can be fully recompensed by the recovery of any economic

loss.  Restoration of the pecuniary interest suffices to return a plaintiff to her prior circumstances."
*Id.*

In the present case, Cadle's claim for appellate fees is a claim for economic loss caused by an attorney's negligence.  The fees were a reasonable and necessary expense incurred in Cadle's appellate litigation against third-party Lobingier as a consequence of Defendants' negligence.[2] Applying the Texas Supreme Court's rationale from *Turner* and *Douglas*, this court believes that the Texas Supreme Court would hold that Cadle's appellate fees are recoverable under Texas law. Accordingly, the court will award an additional $5,500 to Cadle for fees incurred through the appellate phase of the underlying suit.

## III.  ATTORNEY'S FEES FROM THE CURRENT ACTION

Cadle has not claimed any entitlement to attorney's fees incurred in the current action.  Since Cadle has not claimed an entitlement to such attorney's fees, the court will not address the issue of attorney's fees for the current action.

## IV.  PREJUDGMENT INTEREST

### A.  Interest Rate

Cadle argues that it should recover prejudgment interest at the rate of 10% for the total amount of the judgment it was required to pay to satisfy the wrongful underlying judgment ($465,452.06), because the postjudgment interest rate from the underlying judgment was set at 10%. Pl. Br. at 3-4.  Cadle argues that 10% should also apply for the underlying trial and appellate attorney's fees for the same reason.  *Id.* at 4-5.  Cadle contends that it is entitled to 11% interest on

---

[2]Defendants do not dispute the amount of the appellate fees, nor do they contest that such fees were reasonable and necessary.  Defendants have merely argued that the court should not award such consequential damages in light of the split of authority in Texas appellate courts on this issue.

the amount of the promissory note from the underlying suit ($12,174.24), because that was the contractual interest rate that Cadle would have recovered from Defendant Lobingier in the underlying case.  *Id.* at 4.  Defendants argue that a statutory interest rate, currently set at 8.25%,[3] applies, because under Texas law, the prejudgment interest rate is the same as the postjudgment interest rate applicable at the time of the judgment.  Def. Br. at 3-5.

The court determines, under Texas law, that prejudgment interest for all recoverable amounts must be computed as simple interest at the same statutory rate for postjudgment interest, which, under the Texas Finance Code, is currently set at 8.25%.[4]  *See Johnson & Higgins of Texas, Inc. v. Kenneco Energy Inc.*, 962 S.W.2d 507, 532 (Tex. 1998) ("[P]rejudgment interest accrues at the rate for postjudgment interest and it shall be computed as simple interest.").  While Cadle might have been entitled to a contractual interest rate of 11% had it recovered on its $12,174.24 promissory note, its right to recover prejudgment interest in this case is based on common law principles of equity, not contract.  Prejudgment interest, unlike actual damages, is not awarded to make a plaintiff whole;  rather, it is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Id.* at 528.  As the Texas Supreme Court has explained, awarding prejudgment interest out of equity encourages settlements and removes incentives for defendants to delay without creating such incentives for plaintiffs.  *Id.* at 529.  Following this rationale, the court determines that prejudgment

---

[3]At the time Defendants' brief was filed, Texas's statutory judgment rate, which may vary monthly, was 8.25%.  The statutory rate for the month of June 2007 is still 8.25%.

[4]Under Texas law, the statutory judgment interest rate is determined by the consumer credit commissioner on the 15th day of each month and applies to money judgments entered during the succeeding calendar month.  Tex. Fin. Code Ann. § 304.003(b) (Vernon 2006).  The rate is tied to the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation, and is published by the Secretary of State in the Texas Register.  *Id.* at §§ 304.003(c), 304.004.

interest at the rate of postjudgment interest (currently 8.25%) will adequately compensate Cadle in equity for the lost use of the money due as actual damages for all damages recoverable in this action, including the recoverable trial and appellate attorney's fees incurred in the underlying action.[5]

Furthermore, Cadle is entitled to recover prejudgment interest on the $300,000 judgment levied against it in the underlying suit, but *not* on the $465,452.06 it paid to satisfy that judgment. The $300,000 judgment was entered November 6, 1992. Cadle delayed paying that judgment, which accrued interest at the rate of 10%, until May 12, 1998. Even though Cadle disputed the judgment, it could have prevented the accrual of interest by timely paying the judgment or posting bond while pursuing its appeals and other remedies. *See Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002) (payment of judgment to stop the accrual of postjudgment interest while preserving the right to appeal does not moot appeal). Cadle attempts to characterize the $465,425.06 total judgment it paid as the actual amount of damage it incurred as a result of Defendant's negligence, and demands prejudgment interest for this amount. *See* Pl. Reply at 5. The court disagrees with Cadle's characterization.

Cadle's actual damages directly resulting from Defendants' negligence include the $300,000 judgment, the $12,171.24 lost recovery on the promissory note, and the $8,981.57 lost recovery of attorney's fees through the trial phase of the underlying case. Cadle incurred consequential damages resulting from Defendant's negligence in the form of $5,500 in reasonable and necessary appellate fees. The 10% interest that accrued on the $300,000 judgment that Cadle chose not to pay until May

---

[5]Cadle appears to concede in its reply that prejudgment interest should be assessed at 8.25% for all damages, except for the unrecovered $12,171.24 owed on the promissory note. *See* Pl. Reply at 6-8. As the court has explained, the 11% interest Cadle seeks on the promissory note is only recoverable in a suit on a contract, and the court does not believe the contractual interest rate should apply to an award of prejudgment interest based on equity.

**Memorandum Opinion and Order – Page 9**

12, 1998, does not result from Defendant's negligence, nor was it a reasonable and necessary consequential damage, since Cadle chose to delay payment for nearly six years.  Accordingly, the court will award prejudgment interest on the following amounts: $300,000 (underlying judgment), $12,171.24 (promissory note), $8,981.57 (state trial attorney's fees), $5,500 (state appellate fees) at the rate of 8.25%.

### B.  Accrual of Prejudgment Interest

Cadle contends that prejudgment interest should accrue until the date the court enters judgment starting from the following dates: (1) May 12, 1998, the date it paid the judgment from the underlying case, for the amount of the judgment entered against it ($300,000[6]); (2) November 6, 1992, the date judgment was entered in the underlying case, for the amount of the unrecovered promissory note ($12,174.24) and the unrecovered attorney's fees through the state trial ($8,981.57); (3) December 28, 1994, the date the Texas Supreme Court denied review of Cadle's appeal of the underlying case, for its state appellate fees ($5,500).  Pl. Br. at 3-5.  The court summarizes Cadle's position through the following chart:

| Damage amount | Accrual date | Basis |
|---|---|---|
| $300,000 amount of underlying judgment | May 12, 1998 | Date Cadle paid the underlying judgment |
| $12,174.24 amount of unrecovered promissory note | November 6, 1992 | Date underlying judgment was entered |
| $8,981.57 amount of attorney's fees through underlying trial | November 6, 1992 | Date underlying judgment was entered |
| $5,500 amount of appellate fees for underlying case | December 28, 1994 | Date Texas Supreme Court denied review |

------

[6]As the court noted in the previous section, Cadle contends this amount should be $465,452.06–the total amount of the judgment it paid.  The court, however, has determined that Cadle may only recover $300,000, the actual amount of the judgment entered against it.

**Memorandum Opinion and Order – Page 10**

Defendants agree that prejudgment interest for the amount of the underlying judgment should begin to accrue on May 12, 1998, the day Cadle paid the judgment. Defendants argue, however, that interest should not start to accrue on any of the remaining damages until February 13, 1997, the date this suit was filed by Cadle. Def. Br. at 6-7. The court summarizes Defendants' position through the following chart:

| Damage amount | Accrual date | Basis |
|---|---|---|
| $300,000 amount of underlying judgment | May 12, 1998 | Date Cadle paid the underlying judgment |
| $12,174.24 amount of unrecovered promissory note | February 13, 1997 | Date this malpractice suit was filed |
| $8,981.57 amount of attorney's fees through underlying trial | February 13, 1997 | Date this malpractice suit was filed |
| $5,500 amount of appellate fees for underlying case | February 13, 1997 | Date this malpractice suit was filed |

Under Texas law, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim, or (2) the date suit is filed. *Johnson*, 962 S.W.2d at 531. A "claim" is "a demand for compensation or an assertion of a right to be paid." *Id.* (internal citations and quotations omitted). Cadle argues that Defendants received written notice of a claim on November 9, 1993, and on February 10, 1994, and Cadle cites to the same rule cited by the court above for computing the accrual of prejudgment interest; however, Cadle incorrectly maintains that prejudgment interest should begin to accrue on the above-listed dates. Pl. Reply at 6-8 (citing Plaintiff's Exhibits 10 and 11). The court determines that Cadle's November 9, 1993, letter to Defendants does not constitute written notice of a claim, but Cadle's February 10, 1994, letter to Defendants does constitute written notice of a claim. Cadle's November 9, 1993, letter makes no demand for compensation or an assertion of a right to be paid, and, therefore, does not

**Memorandum Opinion and Order – Page 11**

constitute written notice of a claim.  It merely notifies Defendants that during oral arguments for

Cadle's appeal of the underlying case, the justices "appeared to be stuck on the fact that the first set

of requests for admissions was not answered . . . ."  Pl. Ex. 10.  The letter then "suggest[s]" that

"your law firm and your insurance company file with the Court of Appeals an amicus curiae brief

stating that the first set of requests for admissions was never sent to you . . . ."  Pl. Ex. 10.

Cadle's February 10, 1994, letter to Defendants, however, clearly asserts a right to be paid.

It states: "[n]otice is hereby given that this company holds each of you . . . responsible and liable for

any and all losses, expenses, attorney fees and costs suffered or incurred by this company as a result

of your representation of this company in the litigation on the above file."  Pl. Ex. 11.  Adding 180

days to February 10, 1994, prejudgment interest on Cadle's damages from the underlying judgment

($300,000), unrecovered promissory note ($12,174.24), trial attorney's fees ($8,981.57), and

appellate fees ($5,500) would begin to accrue on August 9, 1994.  The court summarizes its

determinations through the following chart:

| Damage amount | Accrual date | Basis |
|---|---|---|
| $300,000 amount of underlying judgment | August 9, 1994 | The earlier of 180 days after Defendant received written notice of claim or date this malpractice suit was filed (accepting Cadle's February 10, 1994, letter as written notice of claim) |
| $12,174.24 amount of unrecovered promissory note | August 9, 1994 | |
| $8,981.57 amount of attorney's fees through underlying trial | August 9, 1994 | |
| $5,500 amount of appellate fees for underlying case | August 9, 1994 | |

As evidenced by the chart summarizing Cadle's requests, it seeks prejudgment interest for

the $300,000 underlying judgment starting from May 12, 1998, which falls within the period that

the court has determined Cadle is entitled to prejudgment interest on that amount.  Accordingly, the

court will grant Cadle interest on this amount from the date it requests–May 12, 1998.  Cadle also seeks prejudgment interest for the $5,500 in appellate attorney's fees starting from December 28, 1994, which falls within the period that the court has determined Cadle is entitled to prejudgment interest on that amount.  Accordingly, the court will grant Cadle interest on this amount from the date it requests–December 28, 1994.  As to the other amounts ($12,174.24 on the promissory note, and $8,981.57 for trial attorney's fees), Cadle seeks prejudgment interest starting from November 6, 1992, which falls outside the period that the court has determined Cadle is entitled to interest on those amounts.  Accordingly, the court will award prejudgment interest on those amounts starting from August 9, 1994, in accordance with the law.  In summary, the court will award prejudgment interest (at the rate of 8.25%) through the date judgment is entered in this case starting from the accrual dates below:

| Damage amount | Accrual date | Basis |
|---|---|---|
| $300,000 amount of underlying judgment | May 12, 1998 | Date Cadle and Defendants agree should apply |
| $12,174.24 amount of unrecovered promissory note | August 9, 1994 | Date prejudgment interest accrues under Texas law |
| $8,981.57 amount of attorney's fees through underlying trial | August 9, 1994 | Date prejudgment interest accrues under Texas law |
| $5,500 amount of appellate fees for underlying case | December 28, 1994 | Date Cadle agrees should apply |

### C. Tolling and Reduction of Interest

Defendants argue that, out of equity, interest should be tolled or reduced for several reasons. First, Defendants contend that the Texas Finance Code provides for tolling during periods of settlement offers, and, therefore, prejudgment interest should be tolled for four periods in which a settlement offer was made during the pendency of this case. Def. Br. at 7-8. Second, Defendants contend that the judgment against all Defendants should be reduced by $10,040.07, because Defendant Mark Winnubst paid Cadle that amount as a part of Winnubst's Chapter 13 plan of reorganization issued during the pendency of this case. *Id.* at 8-9. Defendants contend this credit should be applied first to accrued prejudgment interest, and then to principal. *Id.* at 9. Third, Defendants argue that since no single Defendant was found more than 50% responsible for Cadle's injury, no Defendant is jointly and severally liable for the judgment, and each should pay only such Defendant's share of the judgment and prejudgment interest in accordance with the assessed percentage of responsibility.[7] *Id.* at 9-10. Fourth, Defendants argue that this court should reduce the award of prejudgment interest by a period of two years and 222 days to effectively toll for the time period this action was stayed pending Mark Winnubst's discharge from bankruptcy. *Id.* at 11. Fifth, Defendants contend that prejudgment interest should be further reduced by a period of 337 days to effectively toll for the time period that Defendants' Motion for Judgment as a Matter of Law was pending. *Id.* Finally, Defendants contend that prejudgment interest should be reduced by three years and 73 days to effectively toll for the time period that this case was abated and administratively closed during the pendency of two peripheral appeals. *Id.*

---

[7]Defendants also contend that since the court held Maryann Brousseau not liable in its order on Defendants' motion for judgment as a matter of law, the 5% of responsibility the jury attributed to her should be reapportioned among the remaining Defendants in proportion to their percentages of responsibility. Def. Br. at 9-10.

**Memorandum Opinion and Order – Page 14**

### 1.  Tolling during settlement offer periods

Cadle argues that the tolling provisions under the Texas Finance Code for settlement offer periods do not apply to this case, since the Texas Supreme Court did not adopt all of the Texas Finance Code's provisions relating to prejudgment interest in its decision in *Johnson*.  Pl. Reply at 9.  Cadle further argues that no other tolling or reduction of prejudgment interest is warranted, because none of the delays in this case involved any wrongful conduct on its part.  *Id.*

The court agrees with Cadle that the Texas Finance Code provisions for tolling during periods of settlement offers do not apply in this case.  While the Texas Supreme Court conformed some aspects of the common law relating to prejudgment interest with the Texas Finance Code's statutory provisions available for suits involving wrongful death, personal injury and property damage, it did not supplant the common law with the Texas Finance Code.  *See Johnson*, 962 S.W.2d at 530-33.  In *Johnson*, the court held that no tolling applied in that case involving an equitable grant of prejudgment interest, even though the parties had signed a "standstill agreement," because the agreement was silent on the issue of prejudgment interest.  *Id.* at 531-32.  Furthermore, Texas appellate courts interpreting *Johnson* have held that *Johnson* rejected the wholesale application of the Texas Finance Code to all prejudgment interest cases arising out of the common law.  *See, e.g., Formosa Plastics Corp., USA v. Kajima Int'l, Inc.*, 216 S.W.3d 436, 465 (Tex. App.–Corpus Christi 2006, pet. filed) (finance code tolling provisions applicable only to wrongful death, personal injury or property damage cases.)  Accordingly, the court determines that the Texas Finance Code's statutory provisions for tolling do not apply in this case, where the right to prejudgment interest rests on common law principles of equity, rather than on statutory grounds.

**Memorandum Opinion and Order – Page 15**

## 2.  Reduction by $10,040.07 and joint/several liability

Defendants next argue that the damage judgment against *all* Defendants should be reduced by $10,040.07, applied first to prejudgment interest, because Cadle recovered this amount through Defendant Mark Winnubst in bankruptcy during the pendency of this case.  Def. Br. at 8-9.  This position squarely contradicts Defendants' argument regarding joint and several liability in this case. Defendants argue that since no one Defendant is more than 50% responsible for Cadle's injuries, they are not jointly and severally liable for the judgment and each should pay only such Defendant's share of the judgment and prejudgment interest.  Def. Br. at 9-10.  The court agrees that, under Texas law, a defendant is liable only for damages equal to his percentage of responsibility unless that defendant's percentage of responsibility is greater than 50%.  Tex. Civ. Prac & Rem. Code Ann. § 33.013 (Vernon 2006).  Since no Defendant was more than 50% responsible, there is no joint liability.  Accordingly, Defendant Mark Winnubst's payment to Cadle through his bankruptcy plan of reorganization should be credited only to Winnubst's portion of the judgment and prejudgment interest, *not* to all Defendants.  Furthermore, the $10,040.70 credit must be applied first to the accrued prejudgment interest for which Winnubst is responsible, as of the date that payment was made to Cadle, and then to the principal damage award for which Winnubst is responsible.  *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 816 (Tex. 2006).  The court agrees with Defendants that Maryann Brousseau's 5% responsibility must be reapportioned among the remaining Defendants in proportion to their percentages of responsibility.

### 3.  Reductions to effectively toll for various periods

Defendants seek reductions that would effectively toll the running of prejudgment interest for several periods in which this case sat dormant – during the pendency of Mark Winnubst's bankruptcy, during the pendency of Defendants' motion for judgment as a matter of law, and during the abatement and administrative closure of this case pending two peripheral appeals.  Def. Br. 10-12.  Defendants argue that such reductions are permitted in the interest of equity, since all of the delays were either caused by Cadle, or worked to Cadle's benefit.  *Id.* at 10-11.  Cadle, however, argues that this is not the type of exceptional case that warrants tolling of prejudgment interest.  Pl. Reply at 9-10.  To determine whether any reduction in prejudgment interest is warranted, the court must first determine its authority for granting such reductions.

Under Texas law, a trial court appears to have "no discretion to lessen or increase the interest amount for delays caused by either party."  *Matthews v. DeSoto*, 721 S.W.2d 286, 287 (Tex. 1986).  As the Texas Supreme Court explains:

> Prejudgment interest is not intended to punish the defendant's misbehavior.  It merely compensates the plaintiff for being denied the opportunity to invest and earn interest on the amount of damages. . . . A dilatory penalty would not enhance full and fair compensation because the plaintiff is still deprived of the use of his funds for which he deserves full recompense. . . . In the event a plaintiff unnecessarily delays resolution of the case, the defendant has several tools to force the case to trial such as objecting to the granting of continuances, objecting to the passing of the case, and moving for a special trial setting.

*Id.* (citing *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552-54 (Tex. 1985)).[8] Several cases of this circuit, however, do not interpret *Matthews* so rigidly, and there is some tension between *Matthews* and Fifth Circuit cases interpreting Texas law. *See, e.g.*, *Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.*, 835 F.2d 541, 548-49 (5th Cir. 1987); *Richter, S.A. v. Bank of America Nat'l Trust and Sav. Assoc.*, 939 F.2d 1176, 1197-98 (5th Cir. 1991); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1330 (5th Cir. 1994). The Fifth Circuit takes the position, which this court is bound to follow, that a trial court may increase, decrease or eliminate prejudgment interest *if* it "cannot address through other means any equitable concerns that favor the defendant[.]" *Concorde*, 835 F.2d at 449 (emphasis added). *Concorde* and its progeny hold that a trial court may reduce, even to the point of eliminating, prejudgment interest under "exceptional circumstances." *See id.* For example, in *Richter*, the district court held, and the Fifth Circuit agreed, that exceptional circumstances existed to warrant denial of prejudgment interest in an unusual Texas lender liability action in which the plaintiffs were not the borrowers or even partners in the borrowing entity, and merely held some controlling interest in the borrowing entity. *Richter*, 939 F.2d at 1184. The district court upheld the jury verdict in favor of plaintiffs but denied prejudgment interest, because it believed that the issues and claims in the case involved close questions and genuine disputes, that the jury's awards to the respective plaintiffs were sufficient to compensate them for any delay in the receipt of the monies due them, and that the defendant bank was not dilatory in seeking a speedy

---

[8]In *Matthews*, the Texas Supreme Court relied heavily on its earlier ruling in *Cavnar*, which was modified by its later ruling in *Johnson*. *Johnson* supersedes *Cavnar* by conforming the common law for the accrual and compounding of equitable prejudgment interest with Texas law governing statutory prejudgment interest; however, *Johnson* did not overturn *Cavnar*. *See Johnson*, 962 S.W.2d at 531-33. Thus, the Texas Supreme Court continued to follow *Cavnar*'s rationale for granting equitable prejudgment interest, and the above-quoted holding in *Matthews* remains the law in Texas. *See, e.g.*, *In re M.C.R.*, 55 S.W.3d 104, 108 (Tex. App.–San Antonio 2001, no pet.).

**Memorandum Opinion and Order – Page 18**

resolution of the disputed questions involved in the case. *Id.* at 1197.  The Fifth Circuit agreed with the district court that the determination that the defendant was liable at all, under any theory, "was extremely close," and that the plaintiffs prevailed "due in large part to the generous deference [the Fifth Circuit] applies . . . to jury findings." *Id.* at 1998.  The Fifth Circuit determined that the district court "was in the best position to determine and address the equitable concerns that favored the [defendant] Bank," and that it "correctly did so by denying prejudgment interest." *Id.*  Since this court is bound by the Fifth Circuit, it must determine whether exceptional circumstances exist to warrant a reduction in prejudgment interest in this case.

### a.  Reduction pending Winnubst's discharge from bankruptcy

Defendants contend that, out of equity, the court should reduce prejudgment interest by a period of two years and 222 days while this case sat dormant pending Defendant Mark Winnubst's discharge from bankruptcy.  Def. Br. at 11.  The court does not believe this delay constitutes an exceptional circumstance warranting the reduction of prejudgment interest.  On February 10, 2003, prior to the first trial setting for this case, the court continued this case in light of the automatic stay preventing any claims from proceeding against Winnubst.  The court determined that separating Winnubst from the case, and allowing the remaining Defendants to proceed to trial, would not be practical, and would result in an inefficient use of the time and resources of all parties and the court. By a separate order dated April 29, 2005, the court ordered this case to be administratively closed (rather than merely continued), pending Winnubst's final discharge from bankruptcy.  After Winnubst received his discharge, the court reopened the case on September 19, 2005.

Defendant argues that Cadle is at fault for this delay because it "allowed the court to reach this case on its trial docket on February 10, 2003, even though it knew full well that it had never

taken the steps necessary to have the automatic bankruptcy stay lifted as to Defendant Winnubst." Def. Br. at 11. The court does not believe that Cadle *caused* this delay. Cadle did not file for bankruptcy, and the court sees no conduct on Cadle's part to cause this delay. There is also no evidence that the automatic stay would have been lifted, had Cadle so requested. In fact, the bankruptcy court refused to lift the stay. In *Matthews*, the Texas Supreme Court observed that plaintiffs have little incentive to create delays, since "[f]ew if any plaintiffs would prefer to have defendants retain their funds in order to increase the amount of interest instead of obtaining the full compensation to which they are entitled as quickly as possible." *Matthews*, 721 S.W.2d at 287. The court believes Cadle had little incentive to delay during the pendency of Winnubst's bankruptcy, and is not responsible for this period of dormancy. Accordingly, the court determines that no exceptional circumstances exist that warrant a reduction of prejudgment interest during this period.

### b. Reduction pending a ruling on motion for judgment as a matter of law

Defendants contend that, out of equity, the court should reduce prejudgment interest by a period of 337 days while the parties waited for the court to rule on Defendants' Motion for Judgment as a Matter of Law. Defendants contend this period of time should run from March 2, 2006, the date it filed its motion, to February 2, 2007, the date the court issued its ruling. The court does not believe this period constitutes an exceptional circumstance warranting the reduction of prejudgment interest. First, Defendants were instrumental in bringing about this delay by filing a motion for judgment as a matter of law. This delay did not work in Cadle's favor, as prejudgment interest continued to accrue while Cadle remained deprived of the interest on damages to which the jury ultimately determined it was entitled. Second, while the motion was filed on March 2, 2006, it did not become ripe for review until April 17, 2006, when Defendants filed their reply brief. Finally,

**Memorandum Opinion and Order – Page 20**

this litigation has been quite contentious.  The parties have not agreed on pivotal issues, and even rarely on basic ones, which has made the court's task much more difficult.  In addition to reading the parties' briefing, the court had to review more than 30 trial exhibits and more than 800 pages of trial transcript.  There were multiple defendants, and the court had to give detailed consideration to each argument made on behalf of each defendant against the decision of the jury.  All of this had to be done in conjunction with the court's extremely busy docket.  Considering these factors and the complexity of the issues involved, the court does not believe taking 291 days to issue a ruling on Defendants' Motion for Judgment as a Matter of Law constitutes an exceptional circumstance warranting a reduction in prejudgment interest.

### c.  Reduction pending peripheral appeals

Defendants contend that, out of equity, the court should reduce prejudgment interest by a period of three years and 73 days while this case was abated and administratively closed pending the appeals of two peripheral matters.  The court does not believe that Defendants are entitled to a reduction in equity for this period of dormancy.  *Defendants* moved to stay or abate this case on April 13, 1999, because they believed two peripheral appeals would have a significant impact on the damages claimed in the case at bar.[9]  The court granted Defendants' motion on April 15, 1999, and ordered the case to be administratively closed pending resolution of the two appeals on April 23, 1999.  The case was not reopened until July 5, 2002.  Defendants argue that while they sought the abatement, the peripheral appeals were pursued by Cadle, which merely feigned opposition to the abatement.  Whether Cadle pursued appeals in peripheral matters, or whether Cadle truly

---

[9]The first appeal involved a contempt judgment issued by the Forth Worth Court of Appeals as a result of Plaintiff's failure to comply with two turnover orders in the underlying suit.  The second appeal involved a default judgment entered against Dan Cadle, President of Plaintiff, in an unrelated case that did not involve Defendants, but for which Plaintiff sought to recover as an additional element of damages.

**Memorandum Opinion and Order – Page 21**

opposed Defendants' motion to abate is irrelevant, as Defendants voluntarily sought a stay of this case knowing that it would delay the ultimate resolution of the case.  Since Defendants sought the stay, they should not be allowed to use as an equitable argument their previous request for a stay as a mechanism to reduce the amount of prejudgment interest they must pay.  Accordingly, the court determines no exceptional circumstances exist that warrant a reduction of prejudgment interest during this period of dormancy.

## V.  CONCLUSION

For the reasons stated herein, the court determines that Cadle is entitled to recover damages, attorney's fees and prejudgment interest as herein set forth.  The jury verdict entitles Cadle to recover $312,174.24–the total amount of Cadle's actual damages from the underlying suit, not taking into account attorney's fees or interest.  The court will award Cadle $8,981 for attorney's fees that it is entitled to recover for Defendants' negligence through the trial phase of the underlying case.  The court will also award Cadle $5,500 for appellate fees as reasonable and necessary consequential damages, based on this court's "Erie guess" that the Texas Supreme Court would permit recovery of attorney's fees incurred as a consequence of Defendants' wrongful acts, which forced Plaintiff to incur litigation expenses with a third party.  Cadle is not entitled to recover $465,452.06 (or any amount in excess of $300,000) as damages for the judgment entered against it in the underlying suit, because the final amount of the judgment Cadle paid included accumulated interest not caused by Defendant's negligence, but by Cadle's decision to delay payment of the judgment.

The court determines that prejudgment interest for all of Cadle's recoverable damages will be computed as simple interest at the same rate for postjudgment interest under the Texas Finance Code, currently set at 8.25%. Prejudgment interest on the $300,000 underlying judgment will be calculated starting from May 12, 1998, as both parties agree that to be the proper date of accrual. Prejudgment interest on the $12,174.24 unrecovered promissory note and $8,981 unrecovered attorney's fees will be calculated starting from August 9, 1994, which is 180 days after Defendants received written notice of the claim. Prejudgment interest on the $5,500 appellate fees will be calculated starting from December 28, 1994, the date Cadle agrees its claim for those damages became ripe.

As no Defendant was more than 50% responsible for Cadle's injuries, each Defendant is only liable for damages equal to such Defendant's percentage of responsibility, as found by the jury and modified by the court. Defendant Mark Winnubst's proportionate share of damages will be reduced by $10,040.70, the amount Winnubst paid Cadle through his bankruptcy plan. This $10,040.70 credit shall be applied first to the accrued prejudgment interest for which Winnubst is responsible, as of the date that payment was made to Cadle, and then to the principal damage award for which Winnubst is responsible. Defendant Maryann Brousseau's 5% responsibility will be reapportioned among the remaining Defendants in proportion to their percentages of responsibility.

Calculation of prejudgment interest will not be tolled for settlement offer periods, as the Texas Finance Code's provisions relating to tolling do not apply to a malpractice action. The court will not reduce prejudgment interest out of equitable considerations for various periods that this case was stayed or closed. Finally, the court awards no attorney's fees incurred by Cadle in the prosecution of this malpractice action. The court will separately issue a final judgment, taking into

**Memorandum Opinion and Order – Page 23**

account this memorandum opinion and order, its memorandum order of March 3, 1998, its memorandum opinion and order of January 29, 2003, its order of March 1, 2006, the jury's verdict issued March 3, 2006, and the court's memorandum opinion and order of February 2, 2007.

As the court has expended *considerable* time on this matter, it will not reconsider any part of this memorandum opinion and order unless there is a clerical error or mistake.[10]  Any substantive argument that the parties deem necessary may be made to the United States Court of Appeals for the Fifth Circuit.

**It is so ordered** this 28th day of June, 2007.

Sam A. Lindsay
United States District Judge

---

[10]Likewise, the court will not reconsider any aspect of the judgment unless there is a clerical error, or the judgment inadvertently fails to reflect the substance of this memorandum opinion, previous court orders, and the jury verdict as modified by the court.

**Memorandum Opinion and Order – Page 24**